GALVESTON, H. & S. A. RY. CO. v. WEST et ux.†

(Court of Civil Appeals of Texas. San Antonio. Feb. 26, 1913. Rehearing Denied March 26, 1913.)

1. RAILROADS (§ 348*)—CROSSING ACCIDENTS —ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action for injuries caused by a team becoming frightened at a railroad crossing, evidence as to whether steam was blown from an engine standing close to the crossing, as alleged, held to support a verdict for plaintiff.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. § 348.*]

2. APPEAL AND ERROR (§ 742*)—BRIEFS—ASSIGNMENTS AND PROPOSITIONS.

Where an assignment is not submitted as a proposition, nor any proposition submitted thereunder, and reference is made to another assignment for the statement, authorities, and remarks, it will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

3. TRIAL (§ 133*)—REMARKS OF COUNSEL— CURE BY INSTRUCTIONS TO DISREGARD.

In an action for injuries to a married woman, a remark of plaintiffs' counsel, in his opening argument, that it was probable that if they were to approach her, or any other woman, in her former condition, and propose

to reduce her to her then condition, she would not accept all the money in the world to submit to such treatment, but that this was not the measure of damage, while objectionable, was cured, where it was promptly withdrawn and the jury instructed to disregard it, especially where the verdict was not excessive.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. § 133.*]

4. APPEAL AND ERROR (§ 1060*)—HARMLESS ERROR—REMARKS OF COUNSEL.

In an action against a railroad company for injuries to a married woman, defendant's counsel, prior to the closing argument, among other things apart from the record, ridiculed and criticised plaintiffs' physicians, declared that if the injured woman had not been treated at all she would have been better off, and stated that formerly appendicitis was called the bellyache; that people got well all right; that she would be perfectly well in less than five years; and that her husband was a rich man and could well afford to take care of her. In his closing argument plaintiffs' counsel stated that the company's physicians had told the jury that the good old way of not treating a case at all was their idea of handling this kind of a proposition; that a great corporation like the defendant had many skilled surgeons and doctors, which they could bring to any point where they desired them; that it must be assumed that the railroad surgeons and counsel had talked over the question of miscarriage and removal of the ovary and the appendix, and what a serious matter these things were; that defendant had a right to call for a committee of physicians to examine the injured woman, and if plaintiffs had refused it could have criticised them severely, and said that they were afraid to let anybody but their own doctors see her; that if plaintiffs had consented it could have had such an independent board to testify regarding her injuries; and that the fact that it did not call for such board showed that it had no hope in that line. Held, that such remarks having been in response to departures from the record by defendant's counsel, and not having gone to any unjustifiable length, did not require a reversal, especially where the jury was instructed to disregard them, and the verdict was not excessive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

5. RAILROADS (§ 351*)—CROSSING ACCIDENTS —ACTIONS—INSTRUCTIONS.

In a husband and wife's action for injuries to the wife, caused by jumping from a vehicle when the team became frightened at steam from a railroad engine, an instruction that if the team became frightened and unmanageable, if the wife was necessarily thereby placed in fear of death or serious bodily injury, and while laboring under such fear jumped from the vehicle to avoid death or serious bodily injury, and if by reason of jumping therefrom she sustained injuries alleged in the petition, and if neither she nor her husband was guilty of contributory negligence, to find for plaintiffs, was not objectionable, as failing to require a finding that there was a real danger, or that the situations and conditions were such as would be reasonably calculated to cause fright, and to cause a person of ordinary temperament and courage similarly situated to act as she did, especially where the court gave the charges requested by defendant as to contributory negligence on the part of the husband and wife, and of the husband separately, and further charged that if the horses and vehicle were at a standstill when she jumped at the command of her husband, and if there were steps by which she

could have safely reached the ground by the exercise of ordinary care without jumping, or if her husband could have safely assisted her to the ground, and if either course could and would have been adopted by persons of ordinary care, under the circumstances, and would thereby have avoided the jump and its consequences, they could not recover.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

6. TRIAL (§ 252*)—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

In an action for personal injuries an instruction, that if the jury found and believed from the evidence that plaintiff sustained any of the injuries alleged in the petition, to award such damages as they believed from the evidence would fairly compensate her for such injuries as they believed from the evidence she had sustained and were alleged in the petition was not objectionable as authorizing a recovery for injuries pleaded, but not proved, or as leading the jury to believe that damages should be awarded for such injuries.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

7. TRIAL (§ 252*)—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

Such instruction was not improper because it allowed the jury to determine the issues as to which there was evidence, instead of submitting only such issues as were supported by evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

Appeal from District Court, Kinney County.

Action by Buck Searcy West and wife against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and John J. Foster and Boggess & Smith, all of Del Rio, and W. B. Teagarden, of San Antonio, for appellant. Joseph Jones and Geo. M. Thurman, both of Del Rio, and H. C. Carter and Perry J. Lewis, both of San Antonio, for appellees.

MOURSUND, J. This is a suit for damages alleged to have resulted to appellees by reason of personal injuries sustained by the wife of Buck Searcy West on July 4, 1911, when a team driven by said West became frightened at a locomotive on appellant's track, at a public road crossing, and Mrs. West jumped from the vehicle. Appellant's statement of the issues made by the pleading is adopted by us, as follows:

"Appellees charged, in substance, that as they approached appellant's track in their carriage at a public road crossing for the purpose of crossing they found the crossing blocked by a locomotive; that they requested the employés in charge of the engine to remove the same from the crossing to permit them to pass over; that said employés removed the locomotive partly from the crossing, leaving its front end on the crossing and in close proximity to where the vehicle was bound to pass; that when this was done the husband, who was driving, attempted to drive the team over the crossing, and just as the

team was partially upon the track, and in close proximity to the front part of the locomotive, defendant's servants in charge of it negligently caused and permitted the locomotive, with a loud noise, to emit great volume of steam and water, which caused the locomotive, the crossing, and the team to become enveloped with a cloud of steam, accompanied by a loud, hissing noise; that the team became frightened and unmanageable and whirled back, breaking and entangling the vehicle in the adjacent barbed wire fence, thus producing a situation of great danger, at which the wife became greatly frightened, and fearing death or great bodily injury she jumped from the vehicle to the ground with great violence, inflicting serious and permanent injuries upon her, which are described in detail."

The trial resulted in a verdict and judgment for appellees for $22,500, and defendant appealed.

[1] The first assignment is an attack upon the sufficiency of the evidence to sustain the verdict and judgment; the proposition submitted under the same being that steam did not escape from the engine and frighten the team, because it is undisputed that the engine was standing still at the time the team became frightened, and because it was a physical impossibility for steam to escape from the cylinders of the engine while it was at rest, and that plaintiffs claimed it so escaped. The testimony of Mr. and Mrs. West, and of Mrs. Scott, who was in the vehicle with them, is flatly contradicted by that of the engineer, whose testimony is corroborated by that of the fireman. There was evidence to the effect that the horses were gentle and accustomed to engines and trains. At West's request the engineer backed the engine, so as to leave the crossing free, or at least free enough that West undertook to cross. When on or about the track the team became frightened and commenced backing and plunging. West and wife and Mrs. West's mother all testified positively that the team was frightened because steam and water were suddenly emitted from the engine with a hissing noise. The engineer testified positively that no steam escaped, and that he had the engine in such shape that it could not escape, unless he voluntarily caused it to do so. The fireman did not notice any steam escaping. As we understand the evidence of the engineer, the same only goes to the extent of showing that when the engine was standing still no steam could escape without some act on his part, unless it did so from the pop valve on top of the engine, which automatically opened when the steam registered 200 pounds; that at the time they were carrying about 190 pounds of steam on the engine. Mrs. West testified: "The steam came from the side of the engine down low to the ground, close to the track, by the wheels somewhere." Mr. West testified his impression was that the steam came from

both sides of the engine, about where the cylinders are. As well as he could remember, it came from the front part of the engine. Both testified the steam enveloped them; she stating it came in her face, and that it must have been blown by the wind, because it came out to the side. It was admitted that often engineers let steam out of such cylinders, and that, in fact, upon the occasion next preceding this, when the engine was stopped, the steam was let out. The engineer also testified that usually before an engine is put in motion after standing a long time the cylinder cocks are opened, and water is blown out. There is also a blow-off valve situated under the boiler, having the pipe close to the ground, which, if opened, emits steam from such pipe with a loud, hissing noise. He testified further that he had no means of measuring the amount of steam used in moving the engine as he did, nor how much would be left in the cylinders if he stopped between exhausts, but such as there was would blow out if the cylinder cocks were opened; that it would take only a few seconds to relieve it, and it would not make the same kind of hissing noise that it would if the piston was moving to and fro; that there would not be the amount of pressure in there if the throttle was shut off. The fireman testified he did not think there would have been steam of any consequence in the cylinder cocks after making the slight move which was made by the engine just prior to the trouble with the team. The engineer was positive that, if steam escaped from the pop valve or the blow-off valve, it could not have enveloped the passengers in the vehicle; but the fireman was also sure that it could not have done so if it escaped from the cylinder cocks, unless a strong wind was blowing that way.

We do not think the testimony of plaintiffs is of such certainty regarding the source of the steam as to preclude the idea that it might have come from the blow-off pipe, nor that it could not have been blown to the vehicle, if coming from that source. Nor does the evidence conclusively show that not enough steam remained in the cylinder cocks to make a noise if blown out or let out; the testimony of the engineer and fireman being rather indefinite on that point.

The conclusion is inevitable, if plaintiffs are telling the truth, that steam in a considerable quantity escaped with quite a noise, and the jury, in accepting their version, may have rejected the testimony of the engineer to the effect that he neither opened the blow-off valve nor the cylinder cocks. The physical facts alone do not show plaintiffs' version to be impossible, and the case is not removed from the jury's domain to judge of the credibility of the witnesses.

We conclude the assignment must be overruled.

[2] The second assignment is also an attack upon the sufficiency of the evidence,

various grounds being set out, but the same is not submitted as a proposition, and would be multifarious if it was; nor is any proposition submitted under the same. Reference is made to the first assignment for statement, authorities, and remarks. Being briefed in violation of the rules, the same will not be considered.

Three assignments complaining of statements made in argument will be considered together.

[3] The following statement was made by attorney for plaintiffs in his opening argument: "It is probable that if you were to approach this good woman, or any other woman, in her former condition, and propose to reduce her to her present condition, it is probable that she would not accept all the money in the world to submit to such treatment; but this is not the measure of damage in this case."

Upon objection being made to the statement, the court instructed the jury not to consider the same and to look to the charge alone for the measure of damages, and plaintiff's counsel fully explained to the jury the legal measure of damages, and told them that such legal measure was the only one they could consider.

[4] In the closing argument counsel for plaintiffs made two statements which were objected to:

(1) "Judge Teagarden and Judge Foster, or rather the doctors, I might call them for short hereafter, told you that the good old way of not treating a case was their idea of handling this kind of a proposition. You must admit that a great corporation like this has many skilled surgeons and many skillful doctors to be brought to any point where they desire to have them. You must assume that at the beginning of this case, knowing its serious nature, that the railroad surgeons and the counsel talked about the question of miscarriage, the question of the removal of the ovary, the question of the removal of the appendix, and what a serious matter all these things were."

(2) "They had a right to call for a committee of physicians to examine this woman, and so forth. If we had refused, they could have hammered us before this jury most severely, and said, 'They are afraid to let anybody but their own doctors look in.' If we had consented, they could have had this independent board sit there and tell you about it. The fact that they didn't call for this board shows that they had no hope in that line. Therefore they didn't want any evidence in this case."

Both statements were objected to, and were withdrawn by counsel, who, however, contended they were in answer to arguments made in behalf of defendant, and the court instructed the jury not to consider such statements. The bills of exception were prepared by the court, because of disagreement of counsel, and they contain a qualification which we will repeat in the language of the bills: "Prior to the closing argument, among other things apart from the record, defendant's counsel ridiculed and criticised Drs. Boyd and Young, and declared that if Mrs. West had not been treated at all she would have been better off; that in the good old times appendicitis was called the bellyache, and people got well all right, and defendant's counsel, in argument, predicted that Mrs. West would be perfectly well in less than five years. It was also argued by the defendant's counsel that Mr. West was a rich man, and could well afford to take care of his wife, and that it was not like a case where the people were poor."

All of these arguments relate to that portion of the case involving the determination of the extent of the injuries to Mrs. West and the amount to be awarded to her as damages. The two statements made in the closing argument being in response to departures from the record by appellant's counsel, and not going to any unjustifiable length, clearly should not require a reversal of this case, especially where the jury was instructed not to consider the same. The statement made in the opening argument was objectionable, but was promptly withdrawn, and the jury instructed not to consider it. In the case of Railway v. Thomas, 132 S. W. 974, quoted from at length by appellant, improper questions were asked, and after being answered were withdrawn by counsel, and the appellate court, being convinced that the attorneys asked such questions knowing the inadmissibility of the evidence, held that the verdict should be forefeited, as the only adequate remedy. This, however, is not such a case. It is not apparent that the improper argument was made by design; hence we do not feel disposed to apply a punitive measure, but to consider the matter solely from the standpoint whether such argument was of the character that we can say it probably injured appellant in spite of being withdrawn from the jury, and of the instruction to the jury not to consider the same. We do not think the statement was of such character that we can say the jury could not help being influenced thereby, even though seeking to obey the instruction; and unless the size of the verdict, in itself, evidences the existence of some improper influence inducing its rendition, we shall hold these assignments do not show error requiring correction at our hands. The question whether the verdict is excessive will be considered under the proper assignment.

[5] The sixth assignment reads as follows: "The court erred in all that part of the main charge, paragraph No. 3, wherein it is, in substance and effect, stated that if plaintiff's wife necessarily became frightened, and while laboring under the fear jumped

from the vehicle in order to avoid death or serious bodily injury, and was injured by the jump, plaintiffs would be entitled to recover, because this charge is erroneous and misleading, in that it permits a recovery on less proof and upon a different rule to that which the law requires. The true rule being that the conditions found to exist must have been caused by negligence; they must have been such as alleged, and such as were reasonably calculated to produce the alleged fright, and must have actually produced the fright and what reasonably appeared to be a necessity to jump, before the result of the jump could be actionable; and if a person of ordinary care, under all the circumstances, would not have made the jump, then it would not have been justified. This charge conflicts with this rule and confuses the issue, and was at least calculated to mislead the jury."

The proposition is as follows: "The vice of this charge is that it, in effect, states that if plaintiff's wife was frightened, and because of such fright jumped from the vehicle and damage resulted, plaintiffs would be entitled to recover thereby, assuming that conditions were such as to justify her conduct; whereas there must have been a real danger, or the situation and conditions must have been such as would be reasonably calculated to cause fright, and to cause a person of ordinary temperament and courage similarly situated to act as she did, before her conduct would be justified; and the additional instruction in the charge, that both plaintiffs must have been free from contributory negligence, did not cure the error, but was, in fact, calculated to further confuse the jury."

The charge, after instructing with regard to the emitting of the steam, required the jury, if they found that the team became frightened and unmanageable, to further find that Mrs. West was necessarily thereby placed in fear of death or serious bodily injury, and that while laboring under such fear she jumped from the vehicle in order to avoid death or serious bodily injury, and that by reason of jumping from the vehicle she sustained the injuries alleged in the petition, and, further, that neither West nor Mrs. West was guilty of contributory negligence. It occurs to us that, before the jury could find that Mrs. West was necessarily placed in fear of death or serious bodily injury, they must find the conditions to exist showing either actual or apparent damage, and that in passing upon the question whether she was guilty of contributory negligence they must determine whether the facts existed which would induce a person of ordinary prudence to jump, instead of stay in the vehicle; and in passing upon the question whether Mr. West was guilty of contributory negligence they would, in addition to considering his acts in regard to the team, also have to find that he acted with ordinary prudence in telling his wife to jump out of the vehicle. In addition, the court gave special charge No. 4, requested by defendant; the same being an instruction with reference to the matter of contributory negligence as applied to both Mr. and Mrs. West. Also special charge No. 10, reading as follows: "You are further charged, gentlemen, that if the horses and vehicle was at a standstill when plaintiff's wife jumped out at the command of her husband, and if there were steps to the vehicle or other means or appliances by which she could have safely reached the ground by the exercise of ordinary care, under the circumstances, and without jumping, or if her husband could have safely assisted her to the ground, and a person of ordinary care, under all the circumstances, would have done so, and if the pursuit of either course could and would have been adopted by a person of ordinary care, under all the circumstances, and could and would thereby have avoided the jump and its consequences, then plaintiff cannot recover for any injuries and consequences resulting from the jump."

Special charge No. 11 was also given, which was on the same subject, but applied only to West. The question of contributory negligence was fully covered by these charges. The charge is not as clear as it could be, but we do not think the objections made to same should require a reversal of this case.

The seventh assignment is without merit, and is overruled.

[6, 7] The eighth assignment reads as follows: "The court committed error in all that part of the main charge, to wit, paragraph No. 4, on the measure and elements of damage, in that the jury, without guide or explanation, are therein referred to the petition for the elements of damage and items of personal injury to plaintiff's wife, thereby submitting every injury claimed in the petition, whether sustained by the facts or not; whereas it was the duty of the court to submit only such claims as were supported by facts, and to refer to them, and not leave the jury to hunt them up and discriminate between lawful and unlawful claims, and those properly supported by the facts and those not so supported."

The assignment is not submitted as a proposition, and the only proposition submitted is as follows: "It is error to submit to a jury any material issue or matter where no facts were offered to support it. The vice of this charge is that it authorized and required the jury, if they found for plaintiff, to assess damages upon all injuries alleged in the petition, whether supported by the facts or not, or it was, at least, calculated to so lead the jury to believe; whereas the petition complained of many serious injuries unsupported by any facts."

The portion of the charge claimed to be

objectionable reads as follows: "If you find for the plaintiffs and believe from the evidence that Tommie Scott West sustained any of the injuries alleged in plaintiffs' petition, then you will award the plaintiffs such damages as you believe from the evidence will fairly compensate plaintiffs for such injuries, if any, as you may believe from the evidence the said Tommie Scott West has sustained and are alleged in the plaintiffs' petition."

The first part of the proposition is refuted by the charge itself, as it expressly limits a recovery to those of the injuries pleaded which the jury find to exist. Nor do we think it was calculated to lead the jury to believe they should allow for all injuries pleaded.

The assignment itself contains the proposition that the charge submits every injury mentioned in the petition, and then asserts what the duty of the court was under the circumstances. We think the most that can be said against the charge is that it allows the jury to say whether there is any evidence justifying the consideration of certain issues, instead of the court submitting only such issues as there is evidence to justify the submission of. This point is not made in the proposition, and besides a similar charge was approved by this court in the case of Freeman v. Courtney, 134 S. W. 260, and writ of error denied by the Supreme Court, so the contention of appellant must be overruled.

The ninth assignment complains of the verdict as excessive. This court is of the opinion that it cannot say that the verdict was so grossly large as to indicate the influence of passion, prejudice, or other improper influence.

Appellees object to the consideration of practically all of appellant's assignments because of alleged violations of the changes in the rules adopted in January, 1912. It has been deemed inadvisable by a majority of this court to require an enforcement of such rules as to cases tried within a few months after their adoption, because to do so might further injustice and wrong. See Jones v. Edwards, 152 S. W. 729. We again call the attention of the bar to the necessity for a strict compliance with the rules, as this court will not relax the same as to cases arising at such a time that no excuse can be indulged for failure to comply therewith.

Judgment affirmed.